Carl KRIEGER, Appellant,

v.

IOWA DEPARTMENT OF HUMAN SERVICES, Appellee.

87–1493.

Supreme Court of Iowa.

April 19, 1989.

Lois K. Cox and Gregory T. Boer and John Beasley, Student Legal Interns, of Clinical Law Programs, University of Iowa, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Stephen C. Robinson, Asst. Atty. Gen., for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN and SNELL, JJ.

LARSON, Justice.

In December 1984, Carl Krieger and his family began to receive Aid to Families with Dependent Children (AFDC) on the basis of their financial statement made to the Department of Human Services (DHS). As a condition of receiving AFDC, Krieger worked as a laborer for the Waterloo Pollution Control Plant through a program called CWEP, an acronym for Community Work Experience Program, under which AFDC recipients work for selected governmental subdivisions and nonprofit corporations as a condition to receive AFDC benefits.

In January 1986, Krieger was notified that DHS had learned that his wife owned an insurance policy which had not been disclosed in their original application. Because the inclusion of the policy raised the family's resources above the level allowed for AFDC recipients, their benefits were being terminated. The DHS also began proceedings to recoup its overpayments to Krieger.

Krieger did not dispute the DHS's termination of benefits or the computation of overpayment, but he requested that the DHS give him credit for the value of his services through CWEP. A DHS hearing officer rejected Krieger's claim, and this order was affirmed on Krieger's administrative appeal.

On judicial review, the district court affirmed denial of relief to Krieger, and the court of appeals affirmed. On further review, we affirm the court of appeals and the district court.

Krieger's appeal essentially raises two issues: (1) whether a court has authority to grant equitable relief in judicial review of a DHS decision; and (2) if so, whether equitable relief such as a setoff should be granted under the facts of this case.

In October 1985, during a routine case review, Krieger mentioned to his caseworker that his wife might own an insurance policy which had not been listed in the

family assets at the time of the original application for AFDC benefits. Krieger did not then know the cash value of the policy. Shortly after this, the DHS mailed a form to Krieger asking for details about the policy. Krieger testified at the hearing that he did not receive the letter, and his wife stated that she could not remember receiving it. DHS personnel testified that the letter had been correctly addressed and that it had not been returned by the post office. At any rate, Krieger did not respond, and the DHS did not send a follow-up letter.

The DHS concluded in January 1986 that Krieger's wife did in fact own such a policy and that its cash value put the family over the resource limit. Benefits were canceled on February 1, 1986, effective as of the prior October. The benefits received during this period, in the amount of $1700, were the subject of the DHS's attempted recoupment.

While Krieger was drawing AFDC benefits, he worked at the pollution control center under CWEP for twenty-nine hours per week during October, November and December of 1985 and thirty hours per week during January of 1986. He received no compensation for these services other than his continued eligibility for AFDC.

When Krieger attempted to obtain credit for the value of his services, the DHS hearing officer stated that she did not have authority to grant credit as he requested. On Krieger's administrative appeal, the Commissioner of Human Services adopted the proposed decision of the hearing officer, but he did not close the door completely on Krieger's requested relief. In fact, the commissioner stated that further consideration would be given to Krieger's request for an offset if Krieger were to request a change of commission policy. The commissioner's ruling stated:

> The Department of Human Services will review the issue raised on review, regarding a claim adjustment for hours worked at CWEP, for consideration of a policy change; and nothing will be recouped for 120 days pending a decision.

There will be no waiver of appeal time for judicial review.

Krieger elected not to pursue his offset argument at the agency level by requesting a policy change. Instead he filed a petition for judicial review.

The district court ruled that Krieger would have to show a mutual mistake on the part of Krieger and the DHS in order to receive the equitable relief of an offset. The court concluded that, because the evidence did not show a mutual mistake, equitable relief must be denied.

## I. *Equitable Relief in General.*

■ The court of appeals held that a court, on judicial review, lacked authority to grant equitable relief, and Krieger raises this as an issue in his further review application. The general question of equitable relief on judicial review is discussed in Iowa Code section 17A.19(8) which provides that

> [t]he court [on judicial review] may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, *equitable or legal* and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:
>
> . . . .
>
> e. Affected by other error of law. . . .

The power of a court to grant equitable relief seems to be quite clear under this section. In fact, the DHS does not argue the contrary; it merely argues that the facts do not justify it here. (This statute provides only for equitable relief; it does not transform the case into an equitable proceeding.) We hold the district court had authority to grant equitable relief.

## II. *Equitable Relief in this Case.*

■ The precise nature of the equitable relief sought by Krieger has been difficult to identify. His initial brief claimed that the right of rescission was based on mutual mistake and also argued that the DHS would be unjustly enriched if Krieger does not receive credit for his labor. In his

reply brief, however, Krieger suggests he is relying only on mutual mistake. We do not find merit in either theory.

The mutual mistake relied on by Krieger is actually a combination of two independent "mistakes"—Krieger's failure to list the insurance policy in his original application and the DHS's failure to follow through with a second inquiry about the policy. These were not mutual mistakes; they were separate mistakes, both in their subject matter and their timing. One party's mistake, coupled with the other's ignorance of it, does not amount to a mutual mistake. *See Zurich Ins. Co. v. Bass,* 443 S.W.2d 371, 374 (Tex.Civ.App.1969). To be mutual, a mistake must exist at the time of the contract and must be common to both parties. *See Beynon Bldg. Corp. v. National Guardian Life Ins. Co.,* 118 Ill.App. 3d 754, 759–60, 74 Ill.Dec. 216, 220, 455 N.E.2d 246, 250 (1983). These factors are not found in this case.

We also reject Krieger's unjust enrichment argument. The DHS was not "enriched" by the services rendered for the Waterloo Pollution Control Plant. Krieger worked for the Waterloo plant, not for the DHS, and the DHS received no benefits from his services. While Krieger's work through CWEP furthered the object of the department's CWEP agreement, there is no claim that denial of an offset to Krieger would in any way jeopardize that agreement.

There is a valid public interest in encouraging accurate and truthful information by AFDC applicants. Possible recoupment of benefits paid on the basis of false or erroneous information provides an incentive for accuracy, and denying recoupment would frustrate that policy. As a California court said in an analogous case,

> [i]t is plain that the public's interest in recoupment of monies improperly paid to individuals would not be served by application of equitable estoppel against DSS [Department of Social Services]. To allow the DSS to apply equitable estoppel "would operate to frustrate the strong rule of public policy which the statutory requirements represented."

*Lentz v. McMahon,* 197 Cal.App.3d 445, 231 Cal.Rptr. 622 (1987) (citation omitted).

We affirm the court of appeals decision and the judgment of the district court.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.