**Charles W. LEE, Appellant,**

v.

**Sally Chandler HALFORD, Individually and in her Official Capacity as Director–Designate of the Iowa Department of Corrections; Mildred Elliott, Who is Sued Individually and in her Official Capacity as Chair of the Iowa State Board of Corrections; Joni Keith, Harold McCormick, Johnny Brown, Jean Klingaman, Richard Vander Mey, and Jim Schwiesow, Who are Sued in Their Official Capacities as Members of the State of Iowa Board of Corrections; and State of Iowa, Appellees.**

No. 94–1511.

Supreme Court of Iowa.

Nov. 22, 1995.

Roger J. Kuhle and John O. Haraldson of Law Offices of Roger Kuhle, P.C., West Des Moines, for appellant.

James L. Sayre and Deb Groene of James L. Sayre, P.C., Des Moines, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO and SNELL, JJ.

CARTER, Justice.

The plaintiff, Charles W. Lee, appeals from a summary judgment dismissing his wrongful termination action and § 1983 action against the State of Iowa, the members of the Iowa Board of Corrections, and the director of the Iowa Department of Corrections. The district court concluded that neither the former director of the department of corrections nor the board of corrections had the authority to grant employment tenure to an employee in plaintiff's classification. Consequently, that court ruled, the new director of the department of corrections was free to terminate plaintiff's employment without specifying cause. As a result of these conclusions, the district court found that no breach-of-contract claim could be established and that plaintiff lacked the necessary property interest in his employment to support an action under 42 U.S.C. § 1983. After reviewing the record and considering the arguments of the parties, we affirm the judgment of the district court.

Plaintiff had been employed by the department of corrections since October 1971. He was periodically promoted through the years, and at the time of his discharge, he held the position of deputy director of institutions. That position is the division head of the executive department in which he was em-

ployed. He assumed that classification in June 1988.

In 1992, the then director of the department, Paul Grossheim, died. Sally Chandler Halford was appointed to replace Grossheim in December of 1992 and commenced serving in that position on January 4, 1993. Two days after her service began, defendant informed Lee that she was terminating his position, without cause, effective immediately. Lee's request for a hearing before the board of corrections was denied by that body.

In response to requests for admissions made pursuant to Iowa Rule of Civil Procedure 127, Halford admitted that plaintiff had been given no warning concerning poor performance prior to his discharge. She stated that the only reason for plaintiff's termination was that his management style was not compatible with hers and was thus not conducive to the teamwork environment necessary to deal with the tough issues facing the department.

Plaintiff contends that his tenure was governed by a departmental personnel policy under which he could only be discharged for good cause. He bases his contention on a written departmental directive designated as PR–II–66. At the time of his termination, that policy directive, first adopted in 1980 and thereafter modified several times, provided:

Policy

Any individual who is to fill an exempt administrative position (Warden, Superintendent, Deputy Director) must meet educational, operational, and administrative qualifications that have been established by the Director of Corrections prior to the time of appointment.

Standard

1. Required qualifications include a bachelor's degree in appropriate discipline, five (5) years of related administrative experience, and demonstrated administrative ability and leadership. The degree requirement may be satisfied by completion of a career development program that includes work-related experience, training, or college credits at a level of achievement equivalent to the bachelor's degree.

2. The tenure of office shall be at the pleasure of the Director.

3. Dismissal may only be for good cause which includes, but is not limited to, misconduct, malfeasance of office, misappropriation of funds, or property.

4. The specific reasons for dismissal will be provided in writing to the individual within forty-eight (48) hours of the notice of dismissal.

5. Within fifteen (15) days of dismissal, the exempt staff member may request a formal and open hearing before the Corrections Board on the specific charges.

6. The hearing request must be in writing and delivered/sent to the chairperson of the Corrections Board.

7. All information delivered to the Corrections Board will be kept confidential until such time as the hearing takes place.

8. The Board chairperson shall notify all parties necessary to conduct the hearing of the date, place, and time.

9. The hearing must be held within thirty (30) days of the Board's receipt of the request for a hearing.

10. The hearing will be conducted in accordance with regulations prescribed by the Code of Iowa.

11. At the time of the hearing, if further investigation is necessary, the Board chairperson shall select one or more Board members to complete the investigation, and the hearing may be continued at a later time.

This policy, as initially promulgated and thereafter amended, was approved by both the director of the agency and the board of corrections.

Policy directive PR–II–66 was expressly made applicable to wardens, superintendents, and other exempt administrative positions. The defendants concede that plaintiff's job classification within the agency is an "exempt position." This classification identifies those positions that have been exempted from the protections of the merit system of employment established by Iowa Code chapter 19A.

It is provided in Iowa Code section 19A.3 that the merit system applies to all employees of the state except those expressly exempted by that statute. Among those exempted are:

The chief deputy administrative officer and each division head of each executive department not otherwise specifically provided for in this section, and physicians not otherwise specifically provided for in this section. As used in this section, *"division head"* means a principal administrative position designated by a chief administrative officer and approved by the department of personnel or as specified by law.

Iowa Code § 19A.3(15) (1991).

Plaintiff was a division head as that term is used in section 19A.3(15). Wardens and superintendents of the institutions operated by the department of corrections would also fall within this category, but the legislature has seen fit to grant those positions special merit tenure in Iowa Code section 904.301 (1991) to be administered by the board of corrections. These statutory protections are very similar to those provided in PR–II–66. At the time policy directive PR–II–66 was first adopted in 1980, it only applied to wardens and superintendents of the department's institutions. In 1988, the policy was amended to include other exempt administrative positions such as deputy directors. The latter modification was apparently made to satisfy accreditation standards promulgated by a national commission on accreditation for correctional institutions.

## I. The Breach–of–Contract Claim.

■ We have recognized in other contexts that the contractual rights of public employees are largely a creature of statute. *Hammer v. Branstad,* 463 N.W.2d 86, 91–92 (Iowa 1990) (implementation of comparable worth adjustments must be in accordance with statutory criteria). In interpreting statutes, including public employment statutes, the dominant general purpose should be ascertained and, wherever possible, the various provisions construed so as to accomplish the intended goal. *Iowa Fed'n of Labor, AFL–CIO v. Iowa Dep't of Job Serv.,* 427 N.W.2d

443, 445 (Iowa 1988); *Havill v. Iowa Dep't of Job Serv.,* 423 N.W.2d 184, 186 (Iowa 1988).

■ We are convinced that the purpose of exempting certain categories of employees from merit system protection, as has been done in section 19A.3, was to assure that certain key policymaking employees should serve at the pleasure of the agency head. This in turn serves the dual purpose of creating flexibility on the part of existing agency heads and preventing existing agency heads from tying the hands of their successors with respect to key policy decision makers in their employ. The only agencies authorized by section 19A.3 to negotiate tailor-made merit protection provisions are the department for the blind and the department of education. Whatever contractual import was intended in issuing policy directive PR–II–66, it cannot grant rights beyond the authority of those state officials who issued it. We conclude that section 19A.3 withholds authority from agency heads or agency policymaking boards to grant tenure to employees exempted from merit system protection. The district court was correct in granting the State's motion for summary judgment on plaintiff's breach-of-contract claims.

## II. The § 1983 Claim.

■ Because we have determined in the preceding division that plaintiff served at the pleasure of the director of corrections, he is, we believe, not vested with the requisite property interest to maintain an action under § 1983. It is recognized that

to have a property interest in a governmental benefit, including employment, an individual must have an entitlement to the benefit. Entitlements are created by "rules or understandings" from independent sources such as statutes, regulations and ordinances, or express or implied contracts.

*Orloff v. Cleland,* 708 F.2d 372, 377 (9th Cir.1983). Although plaintiff may have believed that some rule or understanding entitled him to a more secure employment status, that perception was not created by an independent source to which we may give

recognition. Section 19A.3 expressly relegates plaintiff's employment status to one that exists at the pleasure of the director of corrections.

A very similar factual situation was presented in *Brady v. Gebbie,* 859 F.2d 1543 (9th Cir.1988). That case dealt with an Oregon state medical examiner who alleged that he had been wrongfully discharged. Oregon had two categories of state employees, classified and unclassified. Pursuant to Oregon law, unclassified employees could be discharged for any reason, and they had no right to a pretermination hearing. The court held that, even if employees in the unclassified category were issued contracts, they could not assert a property right as a result of conflicting state statutes. *Id.* at 1548.

■ Having concluded that plaintiff lacks the required property interest, we also find that the absence of stigma associated with his discharge negates any potential liberty interest that would provide an alternative basis for bringing a § 1983 action. *See Bennett v. City of Redfield,* 446 N.W.2d 467, 471 (Iowa 1989). The district court acted correctly in granting summary judgment on the § 1983 claim.

### III. *Attempt to Amend Petition.*

More than a year after filing his initial petition, plaintiff asked for leave to amend so as to add additional counts. In denying that motion, the district court stated:

> The three claims stated in plaintiff's original petition are, essentially, contract claims. The two claims plaintiff seeks to add are tort claims. In addition, the two claims require a closer scrutiny of the motive for plaintiff's discharge from employment than do the claims stated in the original petition. The court has granted summary judgment in favor of defendants on the claims stated in the original petition and the petition has been dismissed. The court believes the granting of plaintiff's motion for leave to amend would substantially change the issues.

■ This court has considered the complexity of a case and the timeliness or untimeliness of the requested amendment when determining whether or not a district court has abused its discretion in denying an application to amend. *Farm Fuel Prod. Corp. v. Grain Processing Corp.,* 429 N.W.2d 153, 162 (Iowa 1988). When we consider these factors in the present case, we are convinced that the district court was well within its discretion in refusing to permit the amendment. We have considered all issues presented and find no basis for overturning the order of the district court.

**AFFIRMED.**