# IN THE SUPREME COURT OF IOWA

No. 14–0205

Filed November 6, 2015

**MONROE BRANSTAD,**

Appellant,

vs.

**STATE OF IOWA** ex rel. **NATURAL RESOURCE COMMISSION** and the **IOWA DEPARTMENT OF NATURAL RESOURCES,**

Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Hancock County, Rustin Davenport, Judge.

The court of appeals held that no exceptions to Iowa Code section 625.29(1) applied to preclude an award of attorney fees to Branstad. It reversed the decision of the district court and remanded for a calculation of attorney fees. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Christine E. Branstad of Branstad Law, PLLC, Des Moines, and James L. Pray of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, PLC, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and David R. Sheridan and David L. Dorff, Assistant Attorneys General, for appellees.

**ZAGER, Justice.**

In this appeal we are asked to decide whether the State's role is "primarily adjudicative" when the Natural Resource Commission decides a contested case following an investigation and subsequent decision by the Department of Natural Resources to assess restitution. We find that the State's role in this case was primarily adjudicative, precluding an award of attorney fees. *See* Iowa Code § 625.29(1)(*b*) (2011). Therefore, we vacate the decision of the court of appeals and affirm the judgment of the district court denying attorney fees.

## I. Background Facts and Proceedings.

The Iowa Department of Natural Resources (DNR) was called to investigate a fish kill that occurred in the Winnebago River on or around August 28, 2008. The agency found the following facts.

Scott Grummer, a biologist for the DNR, led the investigation into the fish kill. During the investigation, Grummer interviewed Monroe Branstad about the possibility that the fish kill was caused by pollution from his farming operation. According to Grummer, Branstad said he had recently installed a silage leachate runoff basin on his property. Branstad also said that he was the only farmer in the area he knew of who stored silage leachate. The fish kill affected 16.1 miles of the Winnebago River.

As a result of Grummer's investigation, he determined that the release of sweet corn silage runoff from Branstad's farming operation caused the fish kill on the Winnebago River. Grummer also performed a fish kill assessment, which led him to calculate that the number of fish killed was 31,244 and that those fish had a monetary value of $63,020.23. As a result of this investigation and fish kill assessment, the DNR prepared a litigation report and made a referral to the attorney

general's office for appropriate enforcement action pursuant to Iowa Code section 455B.191 (2009).

On May 11, 2010, Branstad entered into a consent order with the State. As part of this consent order, Branstad admitted that on August 28 and 29, 2008, sweet corn silage leachate, a pollutant, discharged from a containment basin on his farm operation into the Winnebago River in violation of Iowa Code section 455B.186(1). However, Branstad denied the discharge caused the death of fish in the Winnebago River and specifically reserved his right to contest any claim for damages brought by the DNR for the fish kill pursuant to Iowa Code section 481A.151 and Iowa Administrative Code chapter 571—113. Branstad agreed to pay a civil penalty of $10,205 and an administrative penalty of $6795 for the violations.

On June 10, the DNR submitted its restitution assessment to Branstad. As noted in the restitution assessment, Iowa Code section 481A.151 provides that any person who is liable for polluting water of the state in violation of state law shall be required to pay restitution for the injury. *Id.* § 481A.151(1). This Code section also authorizes the Iowa Natural Resource Commission (Commission) to adopt rules providing for procedures for the investigation of violations and the assessment of restitution amounts. *Id.* § 481A.151(2). The restitution assessment also set forth Branstad's appeal rights pursuant to Iowa Code section 481A.151(2) and Iowa Administrative Code rules 571—7.1 and 561—7.4. As set forth in the restitution assessment, "[a] contested hearing will then be commenced" pursuant to the above statutes and rules. Branstad timely appealed.

A contested hearing was conducted on July 25 before an administrative law judge (ALJ). In his appeal, Branstad raised a number

of arguments and defenses. During the proceeding, both Branstad and the DNR were represented by counsel. On December 6, the ALJ issued a proposed decision that affirmed the restitution assessment in its entirety, including the restitution amount of $61,794.49.[1] Branstad timely appealed the proposed decision of the ALJ to the Commission. On March 8, 2012, the Commission conducted a hearing on the appeal at which all parties were able to argue their respective positions. At the conclusion of the hearing, the Commission voted 4–1 to affirm the proposed decision of the ALJ, which then became its final decision.

Branstad timely filed his petition for judicial review in the district court. In its ruling issued July 16, the district court affirmed the final decision of the Commission on most of Branstad's arguments. However, the district court found that the DNR failed to follow its own rules for investigating fish kills. The district court found that the extrapolation method used by the DNR when it investigated the Winnebago River fish kill was incorrect and inconsistent with the methods prescribed by the American Fisheries Society Special Publication 24 (AFS 24). The district court reversed the final decision of the Commission and struck the restitution assessment. On July 29, the DNR requested that the district court reconsider its ruling and remand the case for a restitution calculation based only on the amount of dead fish actually counted. The district court determined that this was consistent with the rules contained in AFS 24. The district court remanded the case to the

---

[1]Following the investigation, Grummer initially calculated the amount of restitution owed to be $63,020.23, using the American Fisheries Society Special Publication 30 (AFS 30). Later, using AFS 24, Grummer calculated the amount owed as $61,448.47. With costs, the final amount in the restitution assessment given to Branstad was $61,797.49.

Commission to recalculate the damages based upon the 2233 dead fish actually counted by the DNR.

In its decision on remand, the Commission reduced the restitution assessment to Branstad as a result of the Winnebago River fish kill to $5298.19. Branstad did not appeal this restitution assessment.

On October 30, Branstad filed an application for an award of attorney fees under Iowa Code section 625.29 (2011). The district court denied Branstad's motion for attorney fees on January 3, 2014. In denying the motion, the district court found three exceptions to the requirement to award attorney fees applied: the State's position was supported by substantial evidence, the role of the State was primarily adjudicative, and an award of fees in the situation would be unjust. *Id.* § 625.29(1)(*a*)–(*c*). Because it found these exceptions applied, the district court did not rule on whether Branstad was the prevailing party.

Branstad appealed the decision of the district court. We transferred the case to the court of appeals. The court of appeals reversed the district court's decision and remanded the case for a calculation of attorney fees. The court of appeals held that none of the exceptions found in Iowa Code section 625.29(1) applied to Branstad's case to preclude an award of attorney fees. The court of appeals also held that the district court should have found Branstad was the prevailing party under the statute.

The State filed an application for further review, which we granted.

## II. Standard of Review.

The standard of review we use for cases involving a district court's interpretation of a statute is for correction of errors at law. *Star Equip., Ltd. v. Iowa Dep't of Transp.*, 843 N.W.2d 446, 451 (Iowa 2014). We are not bound by the district court's legal conclusions. *Van Sloun v. Agans*

*Bros., Inc.,* 778 N.W.2d 174, 179 (Iowa 2010). The sole question we address is whether the district court correctly applied the law with respect to an award of attorney fees under Iowa Code section 625.29. *Remer v. Bd. of Med. Exam'rs,* 576 N.W.2d 598, 600 (Iowa 1998).

### III. Analysis.

Because an award of attorney fees are a derogation of the common law, attorney fees " 'are generally not recoverable as damages in the absence of a statute or a provision in a contract.' " *Botsco v. Davenport Civil Rights Comm'n,* 774 N.W.2d 841, 845 (2009) (quoting *Kent v. Emp't Appeal Bd.,* 498 N.W.2d 687, 689 (Iowa 1993)). The statutory authorization must be express and " 'must come clearly within the terms of the statute.' " *Id.* (quoting *Thorn v. Kelley,* 257 Iowa 719, 726, 134 N.W.2d 545, 548 (1965)). Iowa Code section 625.29(1) is such a statutory exception to the rule, and it allows for the recovery of attorney fees in some civil actions that involve the State. *Remer,* 576 N.W.2d at 600. It provides, in part:

> Unless otherwise provided by law . . . the court in a civil action brought by the state or an action for judicial review brought against the state pursuant to chapter 17A other than for a rulemaking decision, shall award fees and other expenses to the prevailing party unless the prevailing party is the state. However, the court shall not make an award under this section if it finds one of the following:
>
> *a.* The position of the state was supported by substantial evidence.
>
> *b.* The state's role in the case was primarily adjudicative.
>
> *c.* Special circumstances exist which would make the award unjust.

Iowa Code § 625.29(1)(*a*)–(*c*).  Although there are several exceptions listed under the statute, any one exception can prevent a party from being awarded attorney fees.  *See id.* § 625.29(1).

**A. Prevailing Party.**  The district court declined to decide whether Branstad was the prevailing party under the statute because it found that the exceptions under Iowa Code section 625.29(1) applied to prevent an award of attorney fees.  Branstad contends it was error for the district court not to address whether he was the prevailing party.  However, we have previously declined to award attorney fees under one of the exceptions to section 625.29(1) without addressing whether the defendant was the prevailing party.  *See In re Property Seized from McIntyre*, 550 N.W.2d 457, 460 (Iowa 1996).  Because we ultimately conclude that an exception to Iowa Code section 625.29(1) applies, we decline to determine whether Branstad was the prevailing party under the statute.

**B. Exceptions to an Award of Attorney Fees Under 625.29(1).**  The district court relied on three of the exceptions contained in Iowa Code section 625.29(1) to deny Branstad's motion to recover attorney fees.  The court of appeals held none of these exceptions applied to preclude the award of attorney fees.  However, in its application for further review, the State focused its argument largely on whether the action of the Commission was primarily adjudicative.  *See* Iowa Code § 625.29(1)(*b*).  Focusing primarily on the statute, we must determine if the award of attorney fees is prohibited by the exception because the Commission's role was primarily adjudicative.

Branstad argues that we should consider the DNR—not the Commission—to be the "State" for purposes of the "State's role" under the statute.  We do not agree.  Iowa Code section 481A.151 provides that

the DNR, in its investigatory role, was acting under the umbrella of the Commission. *See id.* § 481A.151(2) (2009). The statute requires that "[t]he commission shall adopt rules providing for procedures for investigations and the administrative assessment of restitution amounts. The rules shall establish an opportunity to appeal a departmental action including by a contested case proceeding under chapter 17A." *Id.* The Code clearly anticipates that the DNR will act as an investigatory body and the Commission will take the final agency action if the DNR's restitution assessment is appealed. *See id.*

The phrase "primarily adjudicative" is not defined in the Code. When we are asked to interpret the language of a statute, we apply well-settled principles of statutory interpretation:

> The purpose of statutory interpretation is to determine the legislature's intent. We give words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.

*Schaefer v. Putnam*, 841 N.W.2d 68, 75 (Iowa 2013) (internal quotation marks omitted).

"We also consider the statute's 'subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various interpretations.' " *Cox v. State*, 686 N.W.2d 209, 213 (Iowa 2004) (quoting *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003)).

While primarily adjudicative is not defined by statute, we are not without guidance on this issue. In *Remer*, the court was faced with the question of whether the board of medical examiners' role in a disciplinary

proceeding against a physician was primarily adjudicative under the statute in determining whether to award attorney fees. 576 N.W.2d at 599–600. In that case, the board began an investigation against Remer, a licensed doctor, based on complaints received by the board. *Id.* at 599. The board investigated the merits of the complaint and filed formal disciplinary charges against Remer. *Id.* Once the disciplinary charges were filed against Remer, notice was served on him, and his case was contested in front of a three-member panel of the board. *Id.* at 603. The board was assisted by an impartial ALJ. *Id.* The attorney general prosecuted the case against Remer. *Id.* at 599. Although the charges against Remer were ultimately dismissed by the board, Remer and the board agreed that final action by the agency was achieved. *Id.* at 603.

The court defined primarily adjudicative in *Remer* and concluded that the board's role was primarily adjudicative under the statute. *Id.* at 601, 603. "[I]f an agency's function principally or fundamentally concerns settling and deciding issues raised, its role is primarily adjudicative." *Id.* at 601. When a court determines whether the state's role is primarily adjudicative in the context of this statute, it must look at the state's role in the case currently in front of it, and not the state's role in other, similar cases or the state's role generally. *Id.*

The parties agree that the framework this court set out in *Remer* is appropriate for determining whether to award attorney fees. However, they disagree as to whether the procedural history in this case is similar enough to *Remer* to preclude an award of attorney fees to Branstad. The district court found that the State's role in this case was primarily adjudicative because the agency's role was to investigate, to determine if restitution was appropriate and in what amount, and to consider the defenses argued by Branstad. The court of appeals disagreed and

reversed on appeal, basing its decision primarily on procedural differences between *Remer* and Branstad's case.

Although it was not exactly the same, the procedure followed by the Commission aligns with that of *Remer*. *Id.* at 599. As in *Remer*, the DNR received complaints about the fish kill and investigated it before assessing restitution and before the hearing. Although Branstad's hearing was in front of an ALJ rather than a panel of the Commission, the opinion issued by the ALJ was only a proposed decision. The decision did not become final until it was heard and considered by the Commission.

We also consider the term primarily adjudicative in the context of the statute defining the role of the Commission. As defined by statute, the role of the Commission includes "establish[ing] policy and adopt[ing] rules," in addition to "[h]ear[ing] appeals in contested cases pursuant to chapter 17A." Iowa Code § 455A.5(6)(*a*)–(*b*). A contested case is also defined in chapter 17A as "a proceeding including but not restricted to ratemaking, price fixing, and licensing in which the legal rights, duties or privileges of a party are required by Constitution or statute to be determined by an agency after an opportunity for an evidentiary hearing." *Id.* § 17A.2(5). The Commission in this case followed the exact duties outlined in the statute—to act as an adjudicative body in a contested hearing. *See id.* § 455A.5(6)(*b*). Although the restitution amount requested by the DNR was ultimately found to be the result of an improper application of AFS 24, the Commission weighed the evidence about the fish kill, applied the rules, considered Branstad's various defenses, and determined that the amount in the restitution assessment was proper. The restitution assessment was later found to be improper

during judicial review in district court. However, this is precisely the procedure that should be followed to correct a final agency decision.

We also rely on dictionary definitions to determine the plain and ordinary meaning of the phrase primarily adjudicative. Webster's Dictionary defines "adjudicate" as "to settle finally (the rights and duties of the parties to a court case) on the merits of issues raised," to "enter on the records of a court (a final judgment, order, or decree of sentence)." *Webster's Third New International Dictionary* 27 (unabr. ed. 2002). The Commission's action in this case falls squarely within the definition of adjudicate. The Commission was presented with the fish kill investigation, the restitution assessment, and various defenses raised by Branstad. Although it was the impartial ALJ who heard the case and made an initial decision, the Commission made the final decision after weighing the evidence, considering the defenses, and determining the rights and duties of the parties.

We are mindful of the concerns raised by Justice Carter in his special concurrence in *Remer* regarding cases in which the potential award of attorney fees is swallowed by the exceptions. *See Remer*, 576 N.W.2d at 604 (Carter, J., concurring specially). However, a commentator who has reviewed the legislative history notes that, while there is no explanation provided in the legislation, previous proposed bills would have eased the ability to award attorney fees against the State. *See* Samuel A. Thumma & Barbara J. Dawson, *The Iowa Equal Access to Justice Act: Is Recovery Available?*, 39 Drake L. Rev. 431, 436–42 (1989–90). These bills were rejected in favor of more limiting language contained in the final legislation. *Id.* Key among legislative concerns with prior forms of the bill was the cost to the State if attorney fees were awarded often. *Id.* at 441.

Because we find the State's role was primarily adjudicative and the statutory exception contained in Iowa Code section 625.29(1)(*b*) applies, an award of attorney fees is not proper in this case. Because any one exception can prevent the district court from awarding attorney fees under the statute, we need not address the other exceptions that may apply under Iowa Code section 625.29(1).

## IV. Conclusion.

We hold that the State's role in this case—the final decision of the Commission regarding the amount of restitution for the fish kill—was primarily adjudicative and falls within the exception found in Iowa Code section 625.29(1)(*b*) (2011). Therefore, the district court was correct in its application of the law in denying an award of attorney fees to Branstad. We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**