# IN THE COURT OF APPEALS OF IOWA

No. 18-1329
Filed June 19, 2019

**TERRI ENDRESS,**
        Plaintiff-Appellee,

**vs.**

**IOWA DEPARTMENT OF HUMAN SERVICES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.


        The Department of Human Services appeals, and Terri Endress cross-

appeals, the district court's ruling on judicial review.  **AFFIRMED IN PART,**

**REVERSED IN PART, AND REMANDED.**


        Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant

Attorney General, for appellant.

        Trent W. Nelson of Sellers Galenbeck & Nelson, Des Moines, for appellee.


        Considered by Vogel, C.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

This appeal, like *Pfaltzgraff v. Iowa Department of Human Services*, No. 18-0189, 2019 WL _____, at *___ (Iowa Ct. App. June 19, 2019), also filed today, concerns attempts by the Iowa Department of Human Services (DHS) to recoup payments to childcare providers under the Child Care Assistance Program (CCAP). The district court granted Terri Endress's petition for judicial review after determining the DHS violated Endress's procedural due process rights and exceeded its statutory authority in promulgating the recoupment rules, which it determined are unconstitutionally vague. The DHS appeals. Endress cross-appeals the district court's determination that she is not entitled to attorney fees.

**I. Background Facts and Proceedings.**

Endress was a registered childcare provider who had signed an agreement allowing the DHS to pay her directly for childcare services she provided to families eligible for the CCAP. In July 2014, the DHS sent a notice to Endress stating it would cancel the agreement because she submitted claims for which she was not entitled. Specifically, the DHS alleged that on three occasions, Endress had more children present in her daycare than was allowed under her child home development registration. Endress appealed the decision to cancel her CCAP agreement. The agency issued a final decision in November 2014, affirming the cancellation.

While her appeal was pending, Endress elected to continue receiving CCAP payments. Both the notice of cancellation of her CCAP agreement and the notice of her appeal set out her right to continue receipt of CCAP payments during the

appeal process but cautioned, "Any benefits you get while your appeal is being decided may have to be paid back if the Department's action is correct."

On April 3, 2017, the DHS sent Endress a notice alleging she owed in excess of $16,000 for CCAP payments made from July 2014 to November 2014 while her appeal was pending. Endress appealed, and the agency affirmed the computation of the overpayment.[1] She petitioned for judicial review, and the district court granted her petition after determining the DHS exceeded its statutory authority in promulgating the recoupment provisions of its administrative rules, the rules are unconstitutionally vague, and the rules violated Endress's procedural due process rights. However, it denied Endress's request for attorney fees.

## II. Scope and Standard of Review.

"In a judicial review action on appeal, our job is to determine whether in applying the applicable standards of review under section 17A.19(10) [(2017)], we reach the same conclusions as the district court." *Colwell v. Iowa Dep't of Human Servs.*, 923 N.W.2d 225, 238 (Iowa 2019), *reh'g denied* (Mar. 8, 2019).

> We can grant relief from agency action if the action is "[u]nconstitutional on its face or as applied or is based upon a provision of law that is unconstitutional on its face or as applied." We do not give any deference to the agency with respect to the constitutionality of a statute or administrative rule because it is entirely within the province of the judiciary to determine the constitutionality of legislation enacted by other branches of government. Accordingly, we review constitutional issues in agency proceedings de novo.

---

[1] The term "overpayment" refers to payment received in an amount greater than the provider is entitled to receive, *see* Iowa Admin. Code r. 441-170.1. We note that the "overbilling" here relates to CCAP payments Endress received during the appeal of the DHS's revocation of her CCAP agreement for services Endress actually rendered to children who were eligible for CCAP benefits. Those payments only became overpayments once the DHS issued its final decision in November 2014, which affirmed the cancellation of her CCAP agreement effective as of July 2014.

*NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 44 (Iowa 2012) (alteration in original) (internal citations omitted).

### III. Procedural Due Process.

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). The district court concluded the DHS violated Endress's right to procedural due process by seeking recoupment without providing adequate notice. The DHS challenges this determination.

### A. Existence of a Property Right.

In analyzing a procedural due process claim, we first look to see if a protected liberty or property interest is at issue. *See Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002). The district court determined that the DHS has a statutorily created obligation to pay for provider services during an appeal. The DHS challenges this determination, contending no property right is at issue because Endress was not entitled to the CCAP payments.

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *See Roth*, 408 U.S. at 576. Such sources include "statutes, regulations, and ordinances, or express or implied contracts." *Lee v. Halford*, 540 N.W.2d 426, 429 (Iowa 1995) (quoting *Orloff v. Cleland*, 708 F.2d 372, 377 (9th Cir. 1983)). A statute or administrative regulation creates a property interest if it contains "explicit mandatory language," such as "specific directives to

the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989) (addressing the existence of a liberty interest); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citing *Thompson* for the proposition that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion" in addressing the existence of a property interest); *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) ("To determine whether a particular statute creates a constitutionally protected property interest, we ask whether the statute or implementing regulations place 'substantive limitations on official discretion.'"). "When a government must follow mandatory laws or regulations which limit its discretion to make a decision in any way or for any reason, those laws or regulations can create a property right which is deprived if those regulations are not followed." *Brands v. Sheldon Comm. School Dist.*, 671 F. Supp. 627, 631 (N.D. Iowa 1987) (citing *Hewitt v. Helms,* 459 U.S. 460, 471–72 (1983)).

Iowa Code section 237A.13(4) states:

> The department's billing and payment provisions for the program shall allow providers to elect either biweekly or monthly billing and payment for child care provided under the program. The department shall remit payment to a provider within ten business days of receiving a bill or claim for services provided. However, if the department determines that a bill has an error or omission, the department shall notify the provider of the error or omission and identify any correction needed before issuance of payment to the provider. The department shall provide the notice within five business days of receiving the billing from the provider and shall remit payment to the provider within ten business days of receiving the corrected billing.

The use of the term "shall" indicates the legislature is imposing a duty. Iowa Code § 4.1(30); *Kopecky v. Iowa Racing & Gaming Comm'n*, 891 N.W.2d 439, 443-44 (Iowa 2017). Accordingly, section 237A.13 requires the DHS to either (1) notify providers of an error in billing within five days of receipt a bill and before issuing payment or (2) pay for the services provided within ten business days of receipt of the bill. The language of section 237A.13(4) contains an explicit mandate and limits the DHS's exercise of official discretion, as is required to create a property interest.

Additionally, the DHS's own regulations require that it pay for services provided pending a final decision on appeal from a proposed adverse action. *See* Iowa Admin. Code r. 441-7.9.[2] On this basis, both state law and administrative regulation create a property interest in the payments made under the CCAP.

---

[2] *General standards for when assistance continues.*

*a.* Assistance, subject to paragraph 7.9(1)*"b,"* shall not be suspended, reduced, restricted, or canceled, nor shall a license, registration, certification, approval, or accreditation be revoked or other proposed adverse action be taken pending a final decision on an appeal when:

(1) An appeal is filed before the effective date of the intended action; or

(2) The appellant requests a hearing within ten days from receipt of a notice suspending, reducing, restricting, or canceling benefits or services.

The date on which the notice is received is considered to be five days after the date on the notice, unless the beneficiary shows that the beneficiary did not receive the notice within the five-day period.

*b.* If it is determined at a hearing that the issue involves only federal or state law or policy, assistance will be immediately discontinued.

*c.* Assistance shall be continued on the basis authorized immediately prior to the notice of adverse action, subject to paragraph 7.9(2)*"c."*

The DHS notes that section 237A.13(8) states:

> Nothing in this section shall be construed as or is intended as, or shall imply, a grant of entitlement for services to persons who are eligible for assistance due to an income level or other eligibility circumstance addressed in this section. Any state obligation to provide services pursuant to this section is limited to the extent of the funds appropriated for the purposes of state child care assistance.

It argues this provision makes it clear that the legislature did not intend to direct the DHS to make CCAP payments, only to ensure that the payments were timely reconciled once bills were submitted to the DHS. Although we agree that section 237A.13(8) provides the DHS with discretion concerning which families it provides CCAP benefits, this discretion does not extend to the payments made to CCAP providers. This subsection addresses "persons who are eligible for assistance," not providers. Iowa Code § 237A.13(8). Once the DHS has exercised its discretion under section 237A.13(8) to determine which families qualify for CCAP benefits, the payment of any bills submitted by CCAP providers for childcare to those families is mandatory under section 237A.13(4).

The district court correctly determined that a property right is at issue.

---

*d.* The appellant may ask to have the appellant's benefits continue on Form 470-0487 or 470-0487(S), Appeal and Request for Hearing. If the form does not positively indicate that the appellant has waived continuation of benefits, the department shall assume that continuation of benefits is desired.

*e.* Once benefits are continued or reinstated, the department will not reduce or terminate benefits while the appeal is pending, subject to subrule 7.9(2).

Iowa Admin. Code r. 441-7.9(1).

**B. Process Required.**

The second step in analyzing a procedural due process claim is to determine what process the constitution requires. *See Bowers*, 628 N.W.2d at 691. We do so by balancing three competing interests:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Id.* (citation omitted). Procedural due process ordinarily requires notice and an opportunity to be heard. *See id.* at 690-91. "Notice must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Meyer v. Jones*, 696 N.W.2d 611, 614 (Iowa 2005) (citation omitted).

The DHS contends that it provided Endress with adequate notice that she would be required to repay any CCAP payments made while her appeal was pending because its notices state, "Any benefits you get while your appeal is being decided may have to be paid back if the Department's action is correct." The district court determined this language was insufficient to provide Endress notice because it refers only to "benefits" that must be paid back while the CCAP agreement forms refer to "fees," "payments," and "money received." The court noted that the DHS provides benefits only to qualifying families, whereas it makes payments to CCAP providers who provide childcare to those families eligible for the "benefits." The court also noted that the CCAP agreement only requires repayment of fraudulent charges or money received in error. Because the

payments Endress received during the appeals process were not fraudulently charged or received in error, the court concluded that Endress "had every reason to believe that she was not receiving any benefits and the fee and payments she was receiving for services rendered to eligible parents were hers."

We concur with the district court's determination that the notice provided to Endress concerning recoupment of the CCAP payments made during the appeal process was constitutionally deficient, and we affirm on this basis. Accordingly, we need not address the other grounds on which the district court granted Endress's petition for judicial review or Endress's argument concerning unjust enrichment.

## IV. Attorney Fees.

Endress filed a cross-appeal to challenge the district court's determination that she is not entitled to an award of her attorney fees under Iowa Code section 625.29 (2018). That section provides that the prevailing party in a judicial review action brought against the State pursuant to chapter 17A is entitled to an award of fees and expenses unless one of the following applies:

> a. The position of the state was supported by substantial evidence.
> b. The state's role in the case was primarily adjudicative.
> c. Special circumstances exist which would make the award unjust.
> d. The action arose from a proceeding in which the role of the state was to determine the eligibility or entitlement of an individual to a monetary benefit or its equivalent or to adjudicate a dispute or issue between private parties or to establish or fix a rate.
> e. The proceeding was brought by the state pursuant to Title XVI.
> f. The proceeding involved eminent domain, foreclosure, collection of judgment debts, or was a proceeding in which the state was a nominal party.

        g. The proceeding involved the department of administrative services under chapter 8A, subchapter IV.
        h. The proceeding is a tort claim.

Iowa Code § 625.29(1)(a)-(h).  The district court determined Endress was not entitled to an award of attorney fees because the DHS's role was primarily adjudicative.

Although the statute does not define the term "primarily adjudicative," our supreme court has determined that "if an agency's function principally or fundamentally concerns settling and deciding issues raised, its role is primarily adjudicative."  *Remer v. Bd. of Med. Exam's*, 576 N.W.2d 598, 601 (Iowa 1998). "When a court determines whether the state's role is primarily adjudicative in the context of this statute, it must look at the state's role in the case currently in front of it, and not the state's role in other, similar cases or the state's role generally." *Branstad v. State ex rel. Nat. Res. Comm'n*, 871 N.W.2d 291, 296 (Iowa 2015).

The district court determined that the DHS's role was primarily adjudicative because its primary role was to adjudicate whether Endress had received CCAP overpayments and in what amount.  The court found the attorney fee claim comparable to that made and rejected in *Branstad*.  In that case, a farmer appealed the DNR's assessment for restitution for fish it alleged were killed by pollution from his farm.  *Branstad*, 871 N.W.2d at 292-94.  Following a contested hearing, a proposed decision affirmed the assessment in its entirety.  *Id.* at 293.  The farmer then appealed the decision to the Iowa Natural Resource Commission, which conducted a hearing and affirmed the proposed decision.  *Id.*  The supreme court concluded that the agency's action fell "squarely within the definition of adjudicate" because it was "presented with the fish kill investigation, the restitution

assessment, and various defenses raised by Branstad" before "weighing the evidence, considering the defenses, and determining the rights and duties of the parties." *Id.* at 297.

In reaching its conclusion in *Branstad*, the supreme court cites *Remer*, which concerned disciplinary charges brought against a physician by the Board of Medical Examiners. *Id.* at 296-97; *see also Remer*, 576 N.W.2d at 599-600. The *Remer* court noted:

> Administrative license revocation proceedings are contested cases . . . . An agency adjudicatory proceeding is defined by statute to be a "contested case" if the constitution or a statute requires that rights of a party be determined by an agency after an opportunity for an evidentiary hearing. Agency action falls within the general adjudication category when it determines the rights, duties, and obligations of specific individuals as created by past transactions or occurrences.

576 N.W.2d at 602 (internal citations omitted). On this basis, it determined the role of the board in the disciplinary proceeding was primarily adjudicative. *Id.* at 603. In a special concurrence, Justice Carter agreed that the board's role was primarily adjudicative but went on to express his concern with the notion that all contested cases fall under the category of primarily adjudicative:

> I write separately to stress that in my view all administrative action that results in a contested case hearing does not necessarily fall under that statute. Almost all administrative action that causes adverse consequences to a party seeking attorney fees under section 625.29 will have gone through a contested case hearing process. That is a necessary consequence of the rule requiring exhaustion of administrative remedies. But, this does not mean that the administrative action that is the subject of the complaint was itself primarily adjudicative.

*Id.* at 604 (Carter, J., concurring specially).

The present case illustrates Justice Carter's concern. Endress appealed the DHS's determination that she was required to repay the CCAP payments made to her during her appeal of its decision to terminate her CCAP agreement. However, her appeal concerned the constitutionality of the agency's action.[3] The DHS lacks authority to decide constitutional questions, *see Soo Line R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688 (Iowa 1994) (stating agencies lack authority to decide constitutional questions), which it conceded in both the proposed and final decision. However, Endress was required to raise those claims to the agency in order to preserve them for consideration on judicial review. *See id.* ("Constitutional issues must be raised at the agency level to be preserved for judicial review.").

The present case differs from both *Branstad* and *Remer*. In *Branstad*, 871 N.W.2d at 292-93, a farmer appealed the assessment of restitution damages and the agency adjudicated the issue. In *Remer*, 576 N.W.2d at 603, the board brought disciplinary charges against a physician and ultimately determined the evidence did not support those charges. Although Endress appealed the DHS's assessment of CCAP overpayments, she did not challenge the existence of a CCAP overpayment under the DHS's rules and the amount of that overpayment. Rather, the DHS's promulgation of administrative rules concerning overpayment and the

---

[3] The DHS's own rules state that recoupment of CCAP payments made pending the outcome of an unsuccessful appeal "is not an appealable issue," Iowa Admin. Code r. 441-7.9(7), and the DHS took the position that the only issue before the agency was whether it correctly computed the amount of overpayment, which Endress did not challenge.

procedural due process it afforded Endress were at issue. Because the agency did not adjudicate the matter on appeal, its role was not primarily adjudicative.

The DHS argues the exceptions found at section 625.29(1)(d) and (f) also apply. We concur with the district court that these exceptions are inapplicable for the reasons set forth in the district court's order.

We reverse the district court's determination that Endress is not entitled to attorney fees under section 625.29 and remand to the district court to determine an appropriate award. The court should also consider an award of appellate attorney fees. *See Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (noting that the mechanics lien statute did not limit an award of attorney fees to those incurred in the district court and therefore the statute contemplated an award of appellate attorney fees as well).

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Potterfield, J., concurs; Vogel, C.J., dissents.

**VOGEL, Chief Judge** (dissenting).

I do not believe the notice from the Iowa Department of Human Services (DHS) to Terri Endress violated her right to procedural due process. I also believe Endress cannot recover attorney fees because DHS's actions were primarily adjudicative. Therefore, I respectfully dissent.

**I. Procedural Due Process.**

**A. Existence of a Property Right.**

As the majority notes, Endress must show she has a protected property interest at issue in order to claim violation of her procedural due process rights. *See Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 691 (Iowa 2002). "Stated simply, 'a State creates a protected liberty interest by placing substantive limitations on official discretion.'" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 462 (1989) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

Iowa Code section 237A.13(4) (2017) states:

> The department's billing and payment provisions for the program shall allow providers to elect either biweekly or monthly billing and payment for child care provided under the program. The department shall remit payment to a provider within ten business days of receiving a bill or claim for services provided. However, if the department determines that a bill has an error or omission, the department shall notify the provider of the error or omission and identify any correction needed before issuance of payment to the provider. The department shall provide the notice within five business days of receiving the billing from the provider and shall remit payment to the provider within ten business days of receiving the corrected billing.

The majority reads this language as imposing a duty on DHS to promptly pay "providers" for their claims under the child care assistance program (CCAP).

Thus, the majority finds Endress had a protected property interest in those CCAP monies she claimed as a provider.

While chapter 237A does not define "provider," it does impose a variety of requirements on parties who perform child care. *See, e.g.*, Iowa Code §§ 237A.2 (providing licensing requirements for child care centers), .3B (prohibiting smoking), .5 (providing requirements for personnel). DHS, tasked with administering chapter 237A, must have the ability to identify the persons or facilities who comply with these requirements and therefore qualify as "providers" eligible to receive CCAP monies. Furthermore, a qualified "provider" is not entitled to receive any CCAP monies because DHS may decide which persons are eligible for child care assistance from CCAP. *See id.* § 237A.13(1) ("A state child care assistance program is established in the department to assist children in families who meet eligibility guidelines and are described by any of the following circumstances . . . ."). Even when eligibility is met, it does not rise to the level of an "entitlement" to the qualifying children or families. *See id.* § 237A.13(8) ("Nothing in this section shall be construed as or is intended as, or shall imply, a grant of entitlement for services to persons who are eligible for assistance due to an income level or other eligibility circumstance addressed in this section."); *see also id.* § 237A.13(7) (establishing a waiting list for qualified families to receive child care assistance). The majority finds section 237A.13 should be read to create obligations to "providers" and therefore does not afford DHS discretion once providers submit their claims to DHS; however, the majority overlooks DHS's discretion not only in identifying qualifying children or families but also in approving the providers who may receive child care assistance monies.

The majority also points to DHS rules that the majority says require DHS to pay providers unconditionally for services rendered pending an appeal. *See* Iowa Admin. Code r. 441-7.9. However, these rules only require DHS to pay amounts actually owed. Endress had merely elected to receive CCAP monies after her CCAP provider agreement had been cancelled and during her appeal period. Her expectation—subject to a disclaimer or warning that "[a]ny benefits you get while your appeal is being decided may have to be paid back if the Department's action is correct"—is insufficient to create a protected property interest in tentative claims for those monies.

## B. Process Required.

Even assuming Endress had a protected property interest in her claimed CCAP monies, the notice DHS provided to her was constitutionally sufficient. On July 17, 2014, DHS sent Endress a "Notice of Decision," which informed her that her CCAP provider agreement would be cancelled effective July 29. The notice also informed her she may appeal and "keep your benefits until an appeal is final," but "[a]ny benefits you get while your appeal is being decided may have to be paid back if the Department's action is correct." Additionally, the notice provided phone numbers for Iowa Legal Aid if she "ha[s] trouble understanding this notice." On July 31, DHS sent Endress another "Notice of Decision," which began with this paragraph:

> You have timely appealed the cancellation or denial of your CCA provider agreement. You are therefore allowed to continue to receive child care assistance funding pending the outcome of your appeal. Any benefits you get while your appeal is being decided may have to be paid back if the Department's action is correct.

This notice again provided phone numbers for Iowa Legal Aid if she "ha[s] trouble understanding this notice."

As the majority observes, "Notice must be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Meyer v. Jones*, 696 N.W.2d 611, 614 (Iowa 2005) (citation omitted). The majority faults the use of "benefit" in the notice, finding DHS provides "benefits" to families and "payments" to providers under CCAP. However, nothing in Iowa Code chapter 237A, the relevant administrative rules, or the provider agreement defines "benefit" or otherwise requires such a narrow reading of the term. The dictionary defines "benefit" to include a "payment" or "gift." *See* Webster's Third New International Dictionary 204 (unabr. ed. 2002); *see also Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 544 (Iowa 1996) ("The dictionary is consulted to give words their plain and ordinary meaning in the absence of a legislative definition."). Applying this plain and ordinary definition, monies from DHS to providers for their participation in the child care assistance program can fairly be termed "benefits." This definition is clear from the context of the notices—especially the July 31, 2017 notice that advises Endress she "may continue to receive child care assistance funding pending the outcome of your appeal" but warns in the next sentence "[a]ny benefits you get while your appeal is being decided may have to be paid back if the Department's action is correct." Even if she were uncertain about her obligations if she lost her appeal, the notice provides DHS contact information for more information and it directs her to third-party legal assistance.

While the language is admittedly not perfect, the notice need only "be reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" to satisfy constitutional due process. *See id.* As a business owner tasked with caring for children, it is reasonable to expect Endress to understand the plain language of the notice when it discusses "benefits" or directs her to help if she cannot understand. I believe the notice satisfies constitutional due process. *See id.*

## II. Attorney Fees.

In awarding attorney fees to Endress, the majority found DHS's role was not "primarily adjudicative." Iowa Code § 625.29(1)(b). In this context, "adjudicate" means "to settle finally (the rights and duties of the parties to a court case)." *Branstad v. State ex rel. Nat. Res. Comm'n*, 871 N.W.2d 291, 291 (Iowa 2015) (quoting Webster's Third New International Dictionary 27). As the district court found:

> That is what happened. DHS provided Petitioner a contested hearing, with a meaningful opportunity to present evidence. [*Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 834 (2002)] (A contested case entitles parties affected by the agency action to an adversarial hearing with the presentation of evidence and arguments and the opportunity to cross-examine witnesses and introduce rebuttal evidence). Despite DHS's claim that the existence of overpayments was "non-appealable," Petitioner was able to argue that her payments for services from July to November 2014 did not constitute overpayments. While the initial steps in the present action involved DHS staff investigating and determining whether Petitioner had received an overpayment, the primary action in the case was to adjudicate the value of that overpayment. This case is similar to *Branstad*, where some of the initial acts by [the] Natural Resource Commission included investigative work, the restitution requested by the agency was found to be in error, and the ultimate act was to engage in a contested adjudicative process, with an ALJ and opportunity to present evidence. *Branstad*, 871 N.W.2d at 296. DHS was primarily engaged in adjudication.

I agree with the district court, and I would affirm the denial of attorney fees.

The majority attempts to put teeth into Justice Carter's concern over an expansive interpretation of "primarily adjudicative." *See Remer v. Bd. of Med. Exam'rs*, 576 N.W.2d 598, 604 (Iowa 1998) (Carter, J., concurring specially). However, our supreme court has already commented on Justice Carter's concern, noting the legislature has rejected language that would have increased the court's ability to award attorney fees in judicial review of agency action. *Branstad*, 871 N.W.2d at 297. Because this case presents a typical administrative issue of what amount, if any, one party owes to another, I do not believe DHS's actions here differ from the definition of "primarily adjudicative" in *Branstad*, 871 N.W.2d at 296.

**III. Conclusion.**

For all these reasons, I respectfully dissent. I would reverse the district court's decision regarding notice and find it satisfies procedural due process. I would affirm the district court's denial of attorney fees because DHS's actions were primarily adjudicative.